UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

PETER CANAVAN NEWBERRY, )
)
    Plaintiff, )
) Civil Case No.
v. ) 17-cv-131-JMH
)
SERVICE EXPERTS HEATING & AIR )
CONDITIONING, LLC d/b/a )
KNOCHELMANN PLUMBING, HEATING ) **MEMORANDUM OPINION & ORDER**
& AIR CONDITIONING d/b/a )
KNOCKELMANN SERVICE EXPERTS, )
*et al.*, )
)
    Defendants. )

\*\*\*

This matter is before the Court upon three motions to
dismiss filed by Lennox Industries, Inc. ("Lennox") [DE 10],
Service Experts Heating & Air Conditioning, LLC ("SEHAC") [DE
11], and Service Experts, LLC [DE 12]. Plaintiff has responded
to each of these Motions [DE 13, 14, 15], and each defendant has
filed a Reply in further support of their Motions [DE 17, 18,
19.] The Court concludes that there is merit to each motion and
will dismiss all claims against these three defendants for the
reasons stated below.

**I.**

This action involves a long-standing dispute between the
parties. For the purposes of evaluating the Motion to Dismiss,

the Court accepts the following facts averred in the Complaint as true.

On December 7, 2011, SEHAC made a service call to Plaintiff's home to repair an Aqua-Pure backwash filter system, but Plaintiff was informed that SEHAC would not be able to repair the unit because it did not service Aqua-Pure equipment. (¶ 11). On December 12, 2011, SEHAC returned to Plaintiff's home and sold Plaintiff two new water system units. The first was a TS+ 2000 Easy Water Toxin Shield Backwash Water Filter ("Toxin Shield System") manufactured by Defendant Freije Treatment Systems, Inc. ("Freije"), for the entire home, and the second was a Revita water system for the kitchen. (¶ 12). SEHAC installed the whole house Easy Water Toxin Shield System and Revita water system the same day and Plaintiff paid Defendant SEHAC in full for both systems on the same day. (¶¶ 14, 15).

On December 19, 2011, Plaintiff informed SEHAC of problems with both new water systems. (¶ 16). On December 20, 2011, an agent of SEHAC came to Plaintiff's home to inspect the systems, repair the water systems, and take a water sample to assure Plaintiff that the water was safe to drink and use. (¶ 17). The employee and/or agent of SEHAC then announced that the Easy Water Toxin Shield water system was working perfectly, and advised Plaintiff that they were taking a water sample for testing. (¶ 17). On December 30, 2011, another employee and/or

agent of Defendant SEHAC made a second service call to Plaintiff's home and advised Plaintiff, "Your water tested fine," and then, and on other unspecified occasions, assured Plaintiff that the water was safe for consumption. (¶¶ 18, 19).

After other interactions, Plaintiff asked for the Easy Water Toxin Shield system to be removed and asked that the Aqua-Pure system be re-installed. (¶¶ 20-24). SEHAC informed Plaintiff that it would submit claims for the systems, but never returned to service the system, remove the system, or return or re-install Plaintiff's Aqua-Pure system despite repeated assurances that they would return the Aqua-Pure filter system or compensate Plaintiff for his loss. (¶¶ 25-26). Plaintiff avers that SEHAC repeatedly assured him that the issue would be resolved but then denied any knowledge of Plaintiff's claim for taking and failing to return the Aqua-Pure filter system prior to January 23, 2013. (¶ 34). Plaintiff's Aqua-Pure filter system has not been returned and Plaintiff has not received monetary compensation for it. (¶ 36).

In 2013, Plaintiff and his spouse filed substantially similar civil actions against Defendants SEHAC, Service Experts LLC, and Lennox Industries, Inc., in Kentucky state court. Defendants removed the cases to the United States District Court, Eastern District of Kentucky, at Covington. (¶¶ 37-38; *Newberry v. Service Experts Heating and Air Conditioning, et*

*al.*, Case No. 2:13-cv-00080-DLB-CJS ["Newberry Prior Action"]; *Rorick v. Service Experts Heating and Air Conditioning, et al.*, Case No. 2:13-cv-00081-WOB-CJS) ["Rorick Prior Action"]). During the pendency of those prior actions, an attorney for Defendants pointed out to Newberry that, at the time the suit commenced, no one in Plaintiff's home was sick or injured physically from drinking or using the water in Plaintiff's home and assured Plaintiff that a Defendant had, in fact, tested the water and stated that the water was safe for Plaintiff to drink and use. Plaintiff conceded that there was no present evidence of physical injury nor any established reason to suspect future harm to health or safety from the water in Plaintiff's home. (¶¶ 39-40).

Thus, on May 21, 2013, Plaintiff filed a Notice of Voluntary Dismissal Without Prejudice in the Newberry Prior Action. (¶ 39; Newberry Prior Action, DE 7). The Court entered an Order and dismissed the Newberry Prior Action without prejudice on May 22, 2013. (¶ 39; Newberry Prior Action, DE 8). It later dismissed the Rorick Prior Action without prejudice, on November 15, 2012, but subject to certain "terms and conditions."[1] (Rorick Prior Action, DE 16). Before that

---

[1] The November 15, 2013 Order of Conditional Dismissal Without Prejudice in the Rorick Prior Action imposed a condition that any subsequent action by "Peter Canavan Newberry" against these Defendants related to this subject matter "must be re-filed in the United States District Court for the Eastern District of Kentucky, Covington Division." (Rorick Prior Action, Doc. No.

dismissal, Plaintiff, who is also an attorney, represented his wife at an October 9, 2013, hearing. During that hearing, Newberry explained to the court that he was aware of "physical injuries" which he believed were related to the water filtration system.[2] He explained that four of his dogs had developed tumors and one cat had died after drinking the water and that his wife, Rorick, had been diagnosed with blood clots, intimating that he believed these injuries were the result of some sort of failure of the filtration system at bar in that case, which is the same as the system in this case.

In his Complaint in the present action, he avers that, beginning January 8, 2015, several of Plaintiff's pets became

---

16). However, Plaintiff was not before the Court as a party in that action, and the Lexington division is the the appropriate jury division for this action. *See* LR 3.1(a)(2)(B).

[2]     THE COURT: Are you suing for more than the 75?

MR. NEWBERRY: For more than the 75?

THE COURT: More than the $75,000 in damages.

MR. NEWBERRY: Yes, Your Honor. There are physical injuries also. Again, we don't know what was deposited into the drinking water –

THE COURT: Personal injuries to the people?

MR. NEWBERRY: Yes, Your Honor.

. . .

MR. NEWBERRY: There are four dogs that drink water from the house watering system. They've all developed tumors since this. One cat has died. And the plaintiff has been diagnosed with blood clots. We have video of material and then brown material from these tanks going into our water system.

[DE 12, Ex. 8; also found at *Rorick v. Service Experts Heating & Air Conditioning, LLC*, 2:13-cv-81-WOB, DE 17].

ill with various forms of what were, or were believed to be, cancer. Some died. (¶¶ 41-44, 46, 52). In the fall of 2015, Plaintiff's spouse began suffering reoccurring migraine headaches, a condition for which she is receiving ongoing medical treatment. (¶ 45). On February 26, 2016, Plaintiff submitted a sample of the household water supply to an environmental laboratory after which tests revealed for the first time that the household water supply had been contaminated with known carcinogenic compounds at dangerously high levels. (¶ 49). The carcinogens were entering the water supply while the water filtration systems manufactured by Freije and installed by SEHAC were supposed to be filtering toxins out of the water supply. (¶ 50). The water passing through these systems was the primary source of drinking water for Plaintiff and his spouse, and was the sole source of drinking water for all of the animals that died. (¶ 51). After learning of the toxins in the water, Plaintiff connected to a public water supply and replaced a water heater and a portion of the plumbing. (¶ 53).

On March 16, 2017, Plaintiff filed the present action. It is substantially similar to, and contains many of the same factual averments, as the Newberry Prior Action. Also on March 16, 2017, Plaintiff's spouse, Kimberly Rorick, filed a new action. (*Rorick v. Service Experts Heating and Air Conditioning, et al.*, Case No. 5:17-cv-00132-JMH). It is substantially similar

to Plaintiff's action and is also substantially similar to, and contains many of the same factual averments, as the Rorick Prior Action. Both of these new actions were filed in the Lexington division of this Court.

## II.

In ruling on Defendants' Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Jones v. City of Cincinnati*, 521 F2d 555, 559 (6th Cir. 2008). The Court is not bound to accept as true "recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

"Generally, at the motion to dismiss stage, a federal court may consider only the plaintiff's complaint." *In re Omnicare, Inc. Securities Litigation*, 769 F.3d 455, 466 (6th Cir. 2014).

However, "if a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion into a Rule 56 motion for summary judgment." *Id*. Thus, the Court may consider the prior Newberry action, as well as the pleadings and public proceedings in the action, *Rorick v. Service Experts Heating & Air Conditioning, LLC*, 2:13-cv-81-WOB (referenced in Plaintiff's complaint at ¶ 37-39).

### III.

As an initial matter, the Court agrees with the Defendants Lennox and Service Experts that Plaintiff has failed to aver any act or omission by either of them that led to his injuries. SEHAC was responsible for the sale and installation of a Freije system and was in contractual privity with Plaintiff on the facts averred. Although the Court must accept all well-pled factual allegations, the existence of an agency relationship is a legal determination that is not entitled to the same presumption. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a

factual allegation."). "When attempting to plead liability through agency, a claimant must plead facts that would support a finding that the alleged agents had actual or apparent authority to act on behalf of another." *Pixler v. Huff*, 2012 WL 3109492, at *9 (W.D.Ky. July 31, 2012)(internal quotation marks and citation omitted).

While Plaintiff avers a parent-subsidiary relationship between Defendant SEHAC and both Lennox and Service Experts and avers that they do business in Kentucky by and through SEHAC, Plaintiff's Complaint conflates the idea of vicarious liability and piercing the corporate veil. Absent some averment that Lenox and Service Experts were directly involved in the sale or installation of the Freije system and the subsequent repairs and failure to reinstall the prior system or were in contractual privity with Plaintiff, "the mere existence of a parent-subsidiary relationship is insufficient to establish vicarious liability." *See Moore v. Lowe's Companies, Inc.*, 2013 WL 1907488 at n. 4 (W.D.Ky. May 7, 2013); *see*, *e.g.*, Beck *v. Consol. Rail Corp.*, 394 F. Supp. 2d 632, 640 (S.D.N.Y. 2005). Moreover, "[u]nless otherwise provided in the articles of incorporation, a shareholder of a corporation shall not be personally liable for the acts or debts of the corporation except that he or she may become personally liable by reason of

his own acts or conduct." KRS § 271B.6-220. Without more, the averment that Lennox and Service Experts were "transacting business . . . through" SEHAC is insufficient to establish the type of relationship upon which a party may found a case like this.

Plaintiff must observe the corporate structure and its implications absent an adequately pleaded claim that the corporate veil should be pierced. *See Sudamax Industria e Comercio de Cigarros, Ltda v. Buttes & Ashes, Inc.*, 516 F. Supp. 2d 841, 847 (W.D. Ky. 2007) (citing *Morgan v. O'Neil,* 652 S.W.2d 83, 85 (Ky. 1983); *Natural Resources and Environmental Protection Cabinet v. Williams,* 768 S.W.2d 47, 50-51 (Ky. 1989) ("'A shareholder may be liable for a corporate debt either by "piercing the corporate veil" or by statutory authorization'"; a complaint which alleges neither is fatally defective); *Zetter v. Griffith Aviation, Inc.,* 2006 WL 1117678, *8 (E.D.Ky. April 25, 2006); *First National Bank of Louisville v. Lustig,* 809 F.Supp. 444, 446 (E.D.La. 1992) (interpreting Kentucky law); *Baseball at Trotwood, LLC v. Dayton Professional Baseball Club,* 2003 WL 25566103 (S.D. Ohio Sept.2, 2003) (discussing Kentucky law). Accordingly, the Court dismisses all claims against Lennox and SEHAC for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

**IV.**

Next, the Court considers Plaintiff's claims against Defendant SEHAC. Count I does not aver wrongdoing on the part of SEHAC, only by Defendant Freije Treatment Systems, Inc. It follows that this claim shall be dismissed to the extent that it could be construed as a claim against Defendant SEHAC.

**V.**

Next, the Court concludes that the running of the statute of limitations is fatal to Counts Two through Five and Count Twelve of the Complaint with respect to SEHAC and rejects Plaintiff's argument that the "discovery rule" saves Counts Two through Five and Count Twelve of the Complaint.[3]

Plaintiff's claims for "negligent failure to warn" (Count Two), "Contamination of Plaintiff's Water" (Count Three), and "Negligence" (Count Four) are subject to the statutes for personal injury, injury to personal property, and trespass against real property. *See* KRS 413.140(1)(a) (stating that an action for personal injury must be commenced within one year of its accrual); KRS 413.125 (stating that actions for injury to personal property like animals must be commenced within two years of accrual); KRS 413.120(4) (stating that actions for trespass against real property must be commenced within five

---

[3] The Court notes that Count I could be dismissed for all of the moving Defendants upon expiration of the statute of limitations, as well, and that the claims in Counts Two through Five against the other moving Defendants, discussed above, would suffer the same fate.

years of accrual). Plaintiff's claim for "Fraud" (Count V) avers injuries as "a direct and proximate result" of "fraudulent misrepresentations" by SEHAC, subject to a five year statute of limitations. *See* KRS 413.120(12).

The Court considers, then, when accrual of his claims occurred. Long-established Kentucky law holds that, "[t]he accrual of a cause of action means the right to institute and maintain a suit, and, whenever one person may sue another, a cause of action has accrued, and the statute begins to run." *Henderson v. Fielder,* 185 Ky. 482, 215 S.W. 187, 188 (1919). Under the discovery rule, which applies to cases alleging latent injuries, a cause of action does not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only that he has been injured, but also that this injury may have been caused by the defendant's conduct. *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 60 (Ky. 2010). For purposes of the discovery rule, "injury" is distinguishable from mere physical harm. *Adams v. 3M Co.*, No. CIV. 12-61-ART, 2013 WL 3367134, at *3 (E.D. Ky. July 5, 2013); *Wiseman v. Alliant Hosps., Inc.,* 37 S.W.3d 709, 712 (Ky. 2000). "Injury" "is defined as 'the invasion of any legally protected interest of another.'" *Id.* Plaintiff must simply be aware that he has been wronged by another. *Conway v. Huff,* 644 S.W.2d 333, 334 (Ky. 1982). Plaintiff argues that "[t]here was no reason to

suspect a connection between these injuries and any of the defendants until a household water sample was submitted for testing in February 2016 and revealed contamination of the water in March 2016." [Pl. Resp. to SEHAC Motion for Summary Judgment at 6]. Plaintiff clearly indicated, however, that he was aware of injuries or wrongs sounding in personal injury, injury to personal property, and trespass to real property related to the water filtration systems at least as far back as the filing of his prior suit on March 22, 2013 and in October of 2013 when he advised the Court in the Prior Rorick Action that there injuries related to consumption of the water in his household. In fact, he has always claimed that he called SEHAC in December 2011 because his system was, in his mind, failing and allowing discolored water into his home.

Once a plaintiff knows, either actually or constructively, that the defendant "may" have caused his injury there is no tolling of the statute of limitation under the discovery rule. Constructive knowledge, through awareness of sufficient "critical facts" to put the plaintiff on notice, will trigger the statute of limitations period. *Boggs v. 3M Co.,* No. 11-cv-57-ART, 2012 WL 3644967, at *3 (E.D.Ky. Aug. 24, 2012) (internal quotation marks omitted) (collecting cases), *aff'd on other grounds,* No. 12-6062, 2013 WL 2378558 (6th Cir. May 31, 2013). For purposes of the discovery rule, once the plaintiff

encounters facts that "should excite his suspicion" he effectively has "actual knowledge of th[e] entire claim." *Fluke Corp. v. LeMaster,* 306 S.W.3d 55, 64 (Ky. 2010). Based on what he said in his prior complaint and in open court as counsel in the Rorick Prior Action, Plaintiff clearly had knowledge of critical facts to prompt his own investigation—at the very latest—in October of 2013.

Once a plaintiff knows he has been injured, he "has a duty to investigate and discover the identity of the tortfeasor within the statutory time constraints." *Queensway Fin. Holdings Ltd. v. Cotton & Allen, P.S.C.,* 237 S.W.3d 141, 151 (Ky. 2007). If he is not reasonably diligent in conducting such an investigation, the discovery rule will not toll the statute of limitations. *See Hazel v. Gen. Motors Corp.,* 83 F.3d 422, at *3 (6th Cir. 1996). Plaintiff was clearly on notice that he had been injured in some way at the very latest by March 22, 2013, when he filed his complaint in the Newberry Prior Action because he claimed that he "suffered health problems after living in a home with dirty and questionable water declared safe by Defendant SEHAC" [DE 10-3 at 10; (Complaint in Newberry Prior Action at ¶49).] Accordingly his claim of fraud, that the results of the water testing were misrepresented to him, accrued at the latest on December 30, 2011, by which time he has previously averred that he knew that the jug of water had been

left on his kitchen counter and that SEHAC was representing to him, nonetheless, that his water "tested fine."

Further, he did not act with reasonable diligence to investigate and discover the cause of his family's problems with the water system at that time. Even though he has averred that he knew that the water was never taken for testing, he waited until 2016 to have his water tested and to disconnect the system, thus, mitigating his damages. "Reasonable diligence means that a plaintiff must be as diligent as the great majority of persons would [be] in the same or similar circumstances...." *R.T. Vanderbilt Co. v. Franklin*, 290 S.W.3d 654, 659 (Ky. Ct. App. 2009) (citing *Blanton v. Cooper Industries,* 99 F.Supp.2d 797, 802 (E.D.Ky. 2000) (quoting *Sawyer v. Midelfort,* 227 Wis.2d 124, 595 N.W.2d 423, 439 (1999)) (internal quotations omitted)). On the facts presented here, this Court concludes as a matter of law that a plaintiff has failed to exercise due diligence. *See*, *e.g.*, *Fluke Corp.*, 306 S.W.3d at 61 ("they should have reasonably suspected that the voltage meter was not working properly and investigated this possibility").

Paragraph 16 of the Complaint alleges that the water "turned a dirty blackish brown color" as far back as December 2011, and that he complained to SEHAC about the contamination of his family's drinking water. In other words, Plaintiff was aware of contamination of the water with some substance at that

time. He cannot claim now that tolling is necessary because he did not then know for sure with what the water was contaminated until certain tests were conducted in 2016. *Cantrell v. Ashland Oil, Inc.*, No. 2006-SC-000763-DG, 2010 WL 1006391, at *10 (Ky. Mar. 18, 2010) (affirming dismissal of water contamination claim where plaintiffs may not have known the extent and exact nature of the contamination but nonetheless knew of the injury and that it may have been caused by defendant).

Alternatively, Plaintiff argues that Defendant SEHAC is estopped from asserting the statute of limitations because SEHAC was, itself, responsible for his delay in "discovering" the toxic contamination when an agent of SEHAC advised him on December 30, 2011, that his "water tested fine" even with the obvious discoloration or because SEHAC's counsel represented during the first action in 2013 that his household water quality was fine as of the tests conducted in December 2011. "It is well-established that the reliance necessary to establish a claim of equitable estoppel must be reasonable." *Aculty v. Great West Cas. Co.,* 2005 WL 3488359, 2 (Ky. Ct. App. Dec. 22, 2005) (citing *Gailor v. Alsabi,* 990 S.W.2d 597 (Ky. 1999)); *W. Diamond LLC v. Barnes*, No. 4:12CV-28-JHM, 2014 WL 314474, at *6 (W.D. Ky. Jan. 28, 2014). Plaintiff alleges that he relied on representations from counsel that there was nothing to be discovered from SEHAC during the prior litigation, but courts

have routinely held that it is unreasonable for a party "to rely on the advice of adversary counsel...when both parties are aware that adverse interests are being pursued." *See*, *e.g.*, *Matsumura v. Benihana Nat. Corp.*, 542 F. Supp. 2d 245, 257 (S.D.N.Y. 2008) (citing *Kregos v. Associated Press,* 3 F.3d 656, 665 (2d Cir.1993)). Accordingly, Defendant's reliance on any statements by Defendant's attorney would be unreasonable and could not support an estoppel because Plaintiff could not have reasonably relied on a statement by an adversary or its counsel in the context of the prior litigation. More to the point, he and his wife had concerns about the water and what it was doing to their family and their property, they initiated suit, and he had the opportunity to discover what Defendant knew about the water in their home when a discovery order was set in place in the Rorick prior litigation, but she – through Newberry, as counsel – elected to dismiss her case voluntarily and did not explore the matter further at that time of their own volition.

Further, Plaintiff always had control and access of the allegedly faulty filtration system in question and the water that flowed through it could have had it tested at any time. While he says that he chose not to do so in part because SEHAC told him the water was fine to drink, the Court concludes that it was not reasonable for him to rely on SEHAC's December 30, 2011, statement that the water was fine for consumption based on

its testing because he has previously represented to the court, in the Prior Newberry Action, that SEHAC made false statements concerning water tests because it "never took the water from Plaintiff's kitchen to be tested" and that he knew this because SEHAC's employee or agent took a water sample and then "left the water sample in the jug on the Plaintiff's kitchen counter" on December 20, 2011. [DE 10-3 at 10, (Complaint in Newberry Prior Action at ¶¶10, 45).] The five year statute of limitations for injury to real property, including any period of tolling for his prior lawsuit, expired well before the present suit was commenced on March 16, 2017.

Even if the Court assumes that he knew only of the potential for damage to his real property in late 2011, it is clear that he discovered or should have discovered personal injuries or personal property injury to his pets no later than sometime between December 30, 2011, and October 9, 2013. He began to suspect that his family and their property were being harmed by their drinking water, so much so that, when he and his wife brought suits in 2013, he averred personal injury in his own Complaint and made his statements about his pets and his wife's health issues in open court while representing her. The Court concludes that this was enough to set into motion his obligation to be diligent in discovering any claims for personal injury or injury to personal property and that any category of

18

claims. Because his claims for personal injury and injury to personal property accrued no later than October 9, 2013, which was 3 years, 5 months, and 8 days prior to filing suit in this matter on March 16, 2017, the claims are barred by operation of the statute of limitations..

**V.**

Plaintiff's claims of fraud (Count Seven and Twelve), breach of contract (Count Eight)[4], unjust enrichment (Count Nine)[5], and conversion (Count Ten)[6], some of which are duplicative of earlier claims and all of which were asserted in the earlier action and which relied upon actions taken at the latest on January 6, 2012, according to the Newberry Prior Complaint, are also time barred. *See* KRS § 413.120 (action upon a contract not in writing, express or implied, subject to a five year statute of limitations); KRS 413.120(12) (action for fraud or mistake subject to five year statute of limitations); KRS 413.125 (conversion subject to a two year statute of limitations

---

[4] The gist of this claim is that, "Defendant SEHAC breached the terms of its agreement with Plaintiff by failing to properly install, service and/or repair the whole house toxin shield water filtration system." (Complaint, DE 1 at ¶ 99). Plaintiff does not allege the existence of a written contract.

[5] Plaintiff alleges that Plaintiff conferred a benefit on SEHAC in the form of a payment of $3,200 for the system "which was never properly installed, serviced or replaced" and retention of that benefit would be unjust. (Complaint, DE 1, at ¶¶ 101-104).

[6] Plaintiff alleges that Defendant SEHAC committed conversion when it "took Plaintiff's Aqua-Pure backwash filter system without Plaintiff's knowledge or consent" and "never brought it back" or paid for it.

period); *Cameo, LLC v. Techni-Coat Int'l, N.V./S.A.*, No. 5:14-CV-256-JMH, 2017 WL 690194, at *4 (E.D. Ky. Feb. 21, 2017) (Hood, J.); *Ellis v. Arrowood Indem. Co.*, Civ. A. No. 12-140-ART, 2014 WL 2818458, at *7 (E.D. Ky. June 23, 2014) ("Multiple courts have identified § 413.120(1), for actions 'upon a contract not in writing, express or implied,' as the appropriate statute of limitations for unjust enrichment claims."); KRS 413.125 ("[a]n action for the taking, detaining or injuring of personal property, including an action for specific recovery shall be commenced within two (2) years from the time the cause of action accrued"); *Madison Capital Co., LLC v. S & S Salvage, LLC*, 765 F. Supp. 2d 923, 932 (W.D. Ky. 2011) (citing *Rich & Rich P'ship v. Poetman Records USA, Inc.,* 714 F.Supp.2d 657, 669 (E.D.Ky.2010)) (applying KRS 413.125 to a conversion claim).

The same holds for Plaintiff's Count Six for breach of warranty, although Plaintiff does not even attempt to defend that count in his Response. It is subject to a four-year statute of limitation, was originally asserted as Plaintiff's "Second Cause of Action" in the Prior Newberry Action, and is therefore time-barred. *See* KRS 355.2-725(2) ("A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach," and a "breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and

discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.").

Thus, Plaintiff's claims against SEHAC in Counts Two through Ten and Twelve are all time-barred or duplicative but still time-barred, and the Court will dismiss them.

**V.**

Plaintiff's "Eleventh Cause of Action," for "Malice, Oppression and Fraud" (Complaint, DE 1, at ¶¶ 113-115), avers that he "is entitled to an award of punitive damages and attorneys' fees." This "claim" is actually a prayer for relief, not a separate cause of action, and will be dismissed in the absence of any claim against SEHAC upon which such damages might be founded. *See Toon v. City of Hopkinsville,* No. 5:09–CV–37, 2011 WL 1560590, at *3 (W.D.Ky. Apr. 14, 2011) ("To the extent that Baird is seeking to assert punitive damages as a separate cause of action, the claim will be dismissed"); *Dalton v. Animas Corp.*, 913 F. Supp. 2d 370, 378 (W.D. Ky. 2012) (""[A] claim for punitive damages is not a separate cause of action, but a remedy potentially available for another cause of action."); *Lopreato v. Select Specialty Hosp. N. Kentucky*, 640 F. App'x 438, 444–45 (6th Cir. 2016).

Accordingly, **IT IS ORDERED:**

(1) that the Motion to Dismiss [DE 10] by Lennox Industries, Inc., is **GRANTED;**

(2) that the Motion to Dismiss [DE 11] by Service Experts Heating & Air Conditioning, LLC, is **GRANTED**; and

(3) that the Motion to Dismiss [DE 12] by Service Experts, LLC, is **GRANTED**.

The Court being adequately advised, it is **FURTHER ORDERED:**

(4) that Plaintiff's Motion for an Extension of Time in which to perfect service on Defendant Freije Treatment Systems, Inc. [DE 20] is **GRANTED** and that Plaintiff shall have thirty (30) days from the date of this Order in which to properly serve Defendant Freije.

This the 5th day of April, 2018.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge